IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARTIN B. LONG, Administrator**
**of the Estate of Frederick W. Long, III**

        **Plaintiff,**

        **v.**                         **Case No. 2:06-CV-0701**
                                        **JUDGE EDMUND A. SARGUS, JR.**
                                        **Magistrate Judge Abel**

**TIME INSURANCE CO., et al.,**

        **Defendants.**

### OPINION AND ORDER

This matter is before the Court for consideration of Defendant Time Insurance Co.'s

Motion for Summary Judgment (Doc. 65) and Defendant State Farm's Motion for Summary

Judgment (Doc. 78). For the reasons that follow, Defendants' Motions for Summary Judgment

are **GRANTED**.

### I.

Plaintiff Frederick W. Long, III, now deceased, filed an Amended Complaint on July 19,

2007, asserting claims against Defendant Time Insurance Company (f/k/a Fortis Insurance

Company) (hereinafter, "Time") for breach of contract, failure to act in good faith, and violation

of Ohio Revised Code § 3923.14. Plaintiff asserted claims of negligent misrepresentation,

professional negligence, negligence, negligent infliction of emotional distress, and breach of

fiduciary duty against both Defendants Time and State Farm Insurance Company. The Estate of

Frederick W. Long, III has been substituted as the Plaintiff in this case (see Order, Doc. 86).[1]

---

[1]      Mr. Long and his Estate will be interchangeably referred to as "Plaintiff" herein.

This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §1332.

The undisputed facts, based upon the admissible evidence in the record, are as follows. Plaintiff's claims arise out of a short-term medical insurance policy, #ST6121980, issued to Plaintiff by Time, with an effective date of March 1, 2004. The policy was issued based on an application dated March 1, 2004, submitted to Time by insurance agent Amy Cunningham and prepared with the assistance of health care specialist Emily Bunts who was associated with Cunningham. Cunningham was the State Farm Agent for Plaintiff's homeowners' insurance, which is the only connection between Plaintiff and Defendant State Farm.

On August 18, 2004, Plaintiff underwent surgery for replacement of an aortic valve, and submitted a claim for coverage of his medical expenses. Time denied coverage, after a routine investigation revealed that Plaintiff had been treated for a heart or circulatory system condition within the five years prior to applying for insurance. Question 3 in the application for his insurance policy asked:

> [w]ithin the last five (5) years, have you, your spouse or any dependent to be covered, ever received any medical or surgical consultation, advice, or treatment including medication for: heart or circulatory system disorder including heart attack or chest pain; stroke; diabetes; cancer or tumor; immune system disorder including acquired immune deficiency syndrome (AIDS); alcoholism or alcohol abuse; drug abuse or chemical dependency?

(Application, Doc. 65, Ex. 2). The application stated that Time would not issue a policy if the answer to Question 3 was "yes"; the answer to Question 3 on Plaintiff's application is "no." (Id.) According to the affidavit and deposition testimony of the health insurance specialist who prepared Plaintiff's electronic application, Plaintiff verbally provided all of the information and answers that went into the application. He also reviewed and approved the information, and

2

authorized his signature to be typed on the form and submitted. (See excerpts from the deposition transcript of Emily Bunts, Doc. 78, pp 21, 34-43, and Affidavit of Emily Bunts, Doc. 65, Ex. 38). Directly above Plaintiff's electronic signature, the application states:

> The undersigned applicant and the agent acknowledge . . . that the applicant has read, or has had read to him, the completed application. The applicant realizes that any false statement or misrepresentation in the application may result in claim denial or contract rescission. . . .

(Application, Doc. 65, Ex. 2).

Following Plaintiff's surgery in 2004, Time discovered that within the five-year period preceding March 1, 2004, Plaintiff received medical treatment, consultation and advice related to his pacemaker, an aneurysm, hypertension, aortic valve disorder, heart murmur, and underwent echocardiograms, CAT scans, and stress tests. As a result of this information, Time rescinded Plaintiff's Policy on January 7, 2005. (Doc. 65-34). Time's letter to Plaintiff explained that the Policy was rescinded "based upon medical records provided by Dr. Held for the dates of service June 23, 2000, and January 2, 2001. The June 23, 2000 record (Doc. 65-17) relates to a check-up for Plaintiff's pace-maker. The January 2, 2001 record (Doc. 65-15) is a letter from Dr. Streicher regarding the results of a CT scan which states: "yours is a precarious position. You are at risk for a catastrophe and a re-do surgery, although very risky, is our recommendation."

As a result of the rescission, no coverage was in effect at the time of Plaintiff's August, 2004 surgery. Time's decision to rescind the Policy was upheld by the Ohio Department of Insurance on January 26, 2006. (Doc. 65, Ex. 37). Plaintiff's lawsuit followed.

## II.

### A.    Standard of Review and Burden on Summary Judgment

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  While all inferences must be drawn in favor of the nonmoving party, this Court is under no obligation to imagine favorable facts where the nonmoving party has alleged none. *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 2008 U.S. App. LEXIS 14078 (6th Cir. Ohio 2008).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In opposing summary judgment, Plaintiff has an affirmative duty to "set out specific facts showing a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Conclusory statements, arguments, assertions, and pleadings are not facts, and do not constitute "evidence" under Rule 56. *See* 11 Moore's Fed. Practice § 56.1[7][c] (3d ed. 2007).  Further, Rule 56 requires that affidavits and other evidentiary materials set forth facts that would be admissible at trial. Fed. R. Civ. P. 56(e)(1).  Plaintiff did not oppose Defendants' Motions with affidavits, deposition testimony, or documents containing admissible facts.  Rather, Plaintiff relies solely on the allegations

4

contained in the Amended Complaint, which was not verified by the Plaintiff.[2]  Plaintiff also

relies on his own affidavit dated July 24, 2007, stating simply that he reviewed the Amended

Complaint, and he "believe[s] the contents contained in the Amended Complaint to be true."

(Doc. 71-3).

 Assuming, *arguendo*, that Plaintiff's affidavit constitutes retroactive verification of the

Amended Complaint, and that a verified complaint may be considered as evidence in establishing

a genuine issue of material fact, no factual issues preclude summary judgment in favor of

Defendants.

 **B.  Plaintiff's Tort Claims**

 Plaintiff asserts identical claims of negligent misrepresentation, professional negligence,

negligence, negligent infliction of emotional distress, and breach of fiduciary duty against both

Defendants Time and State Farm.  In addition to contending that no facts support Plaintiff's tort

claims, both Defendants have raised the economic-loss doctrine as a defense to Plaintiff's

negligence causes of action.[3]  Because the allegations giving rise to these claims are identical, the

Court will address the tort claims against both Defendants together.

---

 [2]  Plaintiff's proposed Amended Complaint, filed May 9, 2007, contained an
"Affidavit Supporting Amended Complaint" which was both signed and notarized by attorney
Luther Mills. (Doc. 26-4).  No affidavit or verification is attached to the actual Amended
Complaint filed July 19, 2007.

 [3]  State Farm has also raised a statute of limitations defense.  "Statutes of limitations
are classified as substantive for *Erie* purposes."  *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir.
1994).  The Court finds that Ohio's four-year statute of limitations applies to Plaintiff's
negligence claims (O.R.C. 2305.09) and therefore Plaintiff's claims are not barred by the two-
year statute of limitations applicable to claims for "bodily injury or injury to personal property."
Ohio Rev. Code 2305.10.

    1.    *Negligence and Professional Negligence*

Plaintiff's Amended Complaint seeks the recovery of economic loss in the form of

medical expenses incurred when Plaintiff had surgery in 2004. Time did not pay the claim due to

its rescission of Plaintiff's Policy. There is no allegation or evidence, however, that either Time

or State Farm undertook an duty to Plaintiff to cover his medical expenses *independent* of a valid

contract for health insurance. Ohio law precludes the recovery of economic damages "where

recovery of such damages is not based upon a tort duty independent of contractually created

duties." *Pavlovich v. National City Bank*, 435 F.3d 560, 569 (6th Cir. 2006).

"The economic loss doctrine holds that absent tangible physical harm to persons or

tangible things there is generally no duty to exercise reasonable care to avoid economic losses to

others. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609 (1995). These

economic losses may be recovered in contract only. *Id.*" *J.F. Meskill Enters., LLC v. Acuity,*

2006 U.S. Dist. LEXIS 41491 (N.D. Ohio Apr. 7, 2006). The economic-loss rule applies in a tort

action when, as here, economic loss is unaccompanied by personal injury or property damage.

*Pavlovich*, 435 F.3d at 569.

The issue in *Meskill* was whether the economic loss doctrine barred the plaintiff's

negligence, negligent misrepresentation, and professional negligence claims against its insurance

broker, arising out of the insurer's refusal to pay for a loss covered by the policy. The Court

dismissed plaintiff's negligence claim, and declined to consider the claim as one for

"professional negligence", applying the economic loss doctrine.[4]

--------------------------------

    [4]    "Although Plaintiff attempts to recast its negligence claim as one of 'professional
negligence' akin to attorney malpractice, the Court finds it highly unlikely that the Ohio Supreme
Court would recognize an independent insurance broker malpractice claim in light of its recent

> Applying these holdings to the case at bar, it is clear that Plaintiff cannot maintain its
> negligence claim against [the broker]. Numerous courts have held that negligence claims
> for economic loss do not survive the economic loss doctrine. *See Chemtrol [Adhesives,*
> *Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 537 N.E.2d 624, 629-30 (Ohio 1989)]
> (explaining that "a plaintiff who has suffered only economic loss due to another's
> negligence has not been injured in a manner which is legally cognizable or
> compensable"); *All Erection & Crane Rental Corp.*, 1:01-cv-1282, at 7 (N.D. Ohio Apr.
> 9, 2004) (holding that the economic loss doctrine barred a negligence claim without
> regard to whether the parties were in privity of contract).

*Meskill*, 2006 U.S. Dist. LEXIS 41491 at *12-13.

Plaintiff has not alleged that he suffered damages to person or property, and therefore,

his remedies are limited to those arising under contract, and the economic loss doctrine bars

Plaintiff's negligence and professional negligence claims.

### 2. *Negligent Misrepresentation*

Negligent misrepresentation claims survive the economic loss doctrine. *HDM*

*Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025 (6th Cir. 2003). The Ohio Supreme

Court has adopted the position set forth in Section 552 of the Restatement for determining the

extent of liability for one who, in the course of his or her profession, negligently provides

information to others. *Haddon View Invest. Co. v. Coopers & Lybrand,* 70 Ohio St. 2d 154, 436

N.E.2d 212 (1982). The relevant provisions of Section 552 of the Restatement provide that:

> (1) One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for pecuniary loss
> caused to them by their justifiable reliance upon the information, if he fails to exercise
> reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to
> loss suffered: (a) by the person or one of a limited group of persons for whose benefit and

economic loss decisions." *Meskill*, at *13.

guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*See Merrill v. William E. Ward Ins.*, 87 Ohio App. 3d 583, 590 (Ohio Ct. App., 1993).

Plaintiff's negligent misrepresentation claim relies on the allegations in the Amended Complaint that non-parties Cunningham and/or Bunts negligently misrepresented Plaintiff's eligibility for health insurance. Plaintiff claims that their statements bind State Farm and Time. The factual issues surrounding agency and authority, however, do not need to be addressed, because there are no genuine disputes as to the material facts related to these individuals alleged misrepresentations. Both the Amended Complaint and the affidavits in support of Defendants' Motions state that Plaintiff told Cunningham and Bunts that he had heart surgery in 1998. (Doc. 65, Bunts Aff. at ¶12, Am. Compl. at ¶10). Bunts then filled out an electronic application for health insurance based on the information provided by Plaintiff.

In the Amended Complaint, Plaintiff disputes the date of his meeting with Cunningham and Bunts, and claims that he did not sign the March 1, 2004 application. Construing all of the facts in favor of Plaintiff, the Court finds no genuine issue of material fact. The date of the application is not material to the claim of negligent misrepresentation. Plaintiff admits meeting with Cunningham and Bunts to complete and sign a similar application for short term medical insurance on August 20, 2003. He admits signing the August 20, 2003 application, which contains a question identical to that in the March 1, 2004 application related to his receiving "any medical or surgical consultation, advice or treatment including medication for, heart or circulatory system disorder" within the past five years. That question is answered "no" in the August 20, 2003 application. Last, Plaintiff admits that the March 1, 2004 policy was a binding

8

contract, prior to its recision by Time, regardless of any dispute about the application. Accordingly, the undisputed facts are that Plaintiff – in either 2003 or 2004 – told Cunningham and/or Bunts about his surgery in 1998, but denied receiving treatment in the past five years. Based on these facts, Plaintiff's claim for negligent misrepresentation fails, because the statements that Plaintiff alleges were made by Cunningham and/or Bunts regarding his eligibility were not "false information."

### 3. Negligent Infliction of Emotional Distress

Plaintiff has not established the elements of a claim for negligent infliction of emotional distress under Ohio law. In *Heiner v. Moretuzzo*, the Ohio Supreme Court held that a plaintiff may not recover for negligent infliction of emotional distress "where the defendant's negligence produced no actual threat of physical harm to the plaintiff or any other person." 73 Ohio St. 3d 80, 1995 Ohio 65, 652 N.E.2d 664. *See also Strasel v. Seven Hills Ob-Gyn Assocs.*, 170 Ohio App. 3d 98, 104, 2007 Ohio 171, 866 N.E.2d 48 (Ohio Ct. App.); *King v. Bogner*, 88 Ohio App.3d 564, 569, 624 N.E.2d 364, 367 (1993) (Ohio case law recognizes negligent infliction of emotional distress only where the plaintiff is cognizant of a real physical danger to herself or another.); *Massie v. Dayton Power & Light Co.*, Fayette App. Nos. CA91-10-021 and CA91-11-025, 1992 WL 236801 (Sept. 21, 1992) (same); *Dawoudi v. Ullman Oil, Inc.* Geauga App. No. 93-G-1782, 1994 WL 102403 (Mar. 25, 1994) (same); and *Huston v. Morris*, Franklin App. No. 90AP-1009, 1991 WL 35001 (Mar. 12, 1991) ("Under Ohio law, claims for negligent infliction of serious emotional distress are cognizable only where the plaintiff or someone closely related to the plaintiff faced actual physical peril.").

Plaintiff has provided no evidence and asserted no facts suggesting that Defendants or

9

their alleged agents caused physical harm or the threat of physical harm. Rather, the Amended

Complaint states only that Cunningham and/or Bunts' actions inflicted "serious emotional

distress" and proximately caused Plaintiff "substantial damages." In *Heiner*, the Ohio Supreme

Court emphasized that even "real and debilitating" emotional injuries do not give rise to a claim

of negligent infliction of emotional distress; rather, the tort is narrowly defined to apply to cases

involving physical peril. *Heiner*, 73 Ohio St.3d at 88.

### 4. *Breach of Fiduciary Duty*

"While the law has recognized a public interest in fostering certain professional

relationships, such as the doctor-patient and attorney-client relationships, it has not recognized

the insurance agent-client relationship to be of similar importance." *Nielsen Enterprises, Inc. v.

Insurance Unlimited Agency, Inc.*, Franklin App. No. 85AP-781, 1986 Ohio App. LEXIS 6754

(Ohio Ct. App., May 8, 1986). Thus, the relationship between an insurance agent and an insured,

without more, is not a fiduciary relationship, but an ordinary business relationship. *Roberts v.

Maichl*, 2004 Ohio 4665, P14 (Ohio Ct. App., Sept. 3, 2004); *Heights Driving Sch. v. Motorists

Ins. Co.*, 2003 Ohio 1737, P37-P38 (Ohio Ct. App., Apr. 3, 2003).

In this case, Plaintiff has no presented evidence suggesting that his relationship with

Cunningham and/or Bunts was other than an ordinary insurance agent/client relationship, such

that a fiduciary relationship with the agent could be imputed to Defendants State Farm and/or

Time. Construing the facts as alleged by Plaintiff in his favor, there is no evidence in the record,

admissible or otherwise, that Defendants, Cunningham, Bunts, or Plaintiff expressly or implicitly

agreed to a relationship of "special trust." *Id.*, *quoting Craggett v. Adell Ins. Agency*, 92 Ohio

App.3d 443, 635 N.E.2d 1326 (1993) ("The Ohio Supreme Court has explained that a fiduciary

duty may arise from an informal relationship only if both parties understand that a special trust or confidence has been reposed. *See Nielsen Enterprises Inc. v. Ins. Unlimited Agency Inc.* (May 8, 1986), Franklin App. No. 85-AP-781, 1986 Ohio App. LEXIS 6754."). As set out above, there are likewise no facts suggesting that Defendant Time, State Farm, Cunningham or Bunts acted in such a manner that would constitute a breach of any fiduciary duty.

Considering the pleadings, the affidavits, deposition testimony and other documents in the record, and construing factual inferences in favor of Plaintiff, the Court finds no genuine issue of material fact preventing summary judgment in favor of Defendants on Plaintiff's claims of negligent misrepresentation, professional negligence, negligence, negligent infliction of emotional distress, and breach of fiduciary duty.

### C. Plaintiff's Claims for Breach of Contract, Violation of Ohio Revised Code 3923.14, and Bad Faith

Plaintiff asserts contract, statutory, and bad faith claims only against Defendant Time arising out of Time's rescission of the health insurance Policy. The same material facts govern the Court's analysis of these claims, because rescission of the Policy would constitute both a breach of contract and bad faith if done without compliance with Ohio Revised Code 3923. Revised Code Chapter 3923 governs sickness and accident insurance; Section 3923.14 specifically applies to false statements in applications for health insurance and states, in part:

> The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that [1] such false statement is willfully false, [2] that it was fraudulently made, [3] that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, [4] that it induced the insurer to issue the policy, and [5] that but for such false statement the policy would not have been issued.

11

Defendant Time has the burden to establish these five elements. *Buemi v. Mutual of Omaha Ins. Co.*, 37 Ohio App. 3d 113, 524 N.E.2d 183, 187 (Ohio Ct. App., 1987).

Addressing the materiality elements first, the March 1, 2004 application explicitly states: "The plan . . . cannot be issued if YES is answered on any questions, 2-3." (Doc. 65-3). Time's Motion is also supported by the Affidavit of Gary Moy, an underwriting supervisor, which states:

> An applicant's answer to the Question No. 3 of the application for Policy No. 6121980 is material to the acceptance of the risk of insuring the applicant, and a "No" answer to the question induces the acceptance of the application and issuance of the policy, because, based on the known risks attendant to the conditions listed in that question: (1) An answer of "No" to questions 2 and 3 results in automatic acceptance of the application and issuance of the policy; and (2) An answer of "Yes" results in an automatic decline of the application and no issuance of a policy, based on the risks associated with the conditions listed in Question No. 3.

Plaintiff does not dispute the materiality of the answers given on the application for insurance.

Considering the falsity elements of the statute, the case of *Redden v. Constitution Life Ins. Co.* is instructive on the requisite showing an insurer must demonstrate. The syllabus of *Redden* states:

> Under the terms of a contract for health and accident insurance, a recovery is precluded by false answers knowingly given by the insured to material questions contained in his signed application or where the insured on delivery of the policy discovers that such answers are false and he then conceals such falsity from the insurer.

172 Ohio St. 20, 173 N.E.2d 365 (1961). "The significance of the syllabus is that it recognizes that, when an applicant makes a knowingly false answer to a question in the application, such answer satisfies the statutory requirement that it be 'willfully false' and 'fraudulently made.'" *Buemi*, 37 Ohio App. 3d at 119.

Based on the medical evidence submitted by Defendant Time, there is no dispute that the answer to Question No. 3 in Plaintiff's March 1, 2004 application was false, and that Plaintiff

12

gave the same false answer in response to the identical question in his August 20, 2003 application. As set out above, Plaintiff had received extensive treatment, consultation, advice and medication for heart-related conditions in the five years preceding August 20, 2003 or March 1, 2004. Time's Motion is supported by the relevant medical records, and affidavits and portions of the deposition transcripts of Cunningham and Bunts, both of whom state that Plaintiff did not disclose that he had received medical treatment in the preceding five years.

In opposition to Time's Motion, Plaintiff contends that he does not recall completing the 2004 application, and that he told Bunts about his 1998 "surgery and medical care" in 2003. The Amended Complaint does not allege, however, that Plaintiff told Bunts about any of the medical treatment he received during from 1999 to 2004, and Bunts' affidavit and deposition testimony on this point remains uncontroverted.

Plaintiff's allegations regarding the March 1, 2004 application do not present a material factual dispute. An individual will be viewed as having ratified the answers on an insurance application if the individual signs the application. *Ed Schory & Sons, Inc. v. Society Natl. Bank,* 75 Ohio St. 3d 433, 441, 1996 Ohio 194; 662 N.E.2d 1074 (1996). Furthermore, an insurance applicant's signature and assent that the statements contained in the application are correct serves, as a matter of law, as his adoption of the statements notwithstanding a claimed failure to review the application. *Buemi,* 37 Ohio App. 3d at 119, *citing Republic Mut. Ins. Co. v. Wilson,* 66 Ohio App. 522, 35 N.E.2d 467 (Ohio Ct. App., 1940). Having signed the application, the individual adopts and ratifies all statements appearing above the signature regardless of whether he specifically provided answers. *Id.* Similarly, once the insurance policy is issued and has been accepted by the insured, he is presumed to know the policy's contents and is bound by its terms.

13

*Travelers' Ins. Co. v. Myers*, 62 Ohio St. 529, 541 (1900); *El-Ha' Kim v. American Gen. Life and Accident Co.*, Mahoning App. No. 97 CA 6, 1999 Ohio App. LEXIS 3920, 9-10 (Ohio Ct. App., Aug. 20, 1999).

In the event an insured provides a correct answer to the agent who records a false answer without the insured's knowledge, the insured has a duty to report the falsity upon discovery. *Beard v. N.N Investors Ins. Co., Inc.*, 21 Ohio App. 3d 219, 220, 486 N.E.2d 1255 (1985), *citing Redden*, 172 Ohio St. 20. In the event the insured fails to notify the company, he will be viewed as a participant in the fraudulent activity. *Id.* As applied here, even if Bunts incorrectly typed "No" in response to Question 3, Plaintiff ratified that false statement by authorizing his signature and accepting the Policy as issued.

The undisputed facts establish that Plaintiff knowingly failed to disclose his relevant medical history to Time. At a minimum, Plaintiff admits that he completed and signed the August, 2003 application containing the identical question and false answer denying treatment during the last five years. Additionally, the August, 2003 application states that "this policy is not renewable"; Plaintiff has offered no explanation for how he received a new Policy in 2004, if not by completing an application. Even if Plaintiff does not recall completing the 2004 application, by authorizing his signature on the application, he is charged with knowledge of his answers, and was responsible for correcting any false answers recorded by Bunts. Last, Plaintiff admits that he entered into a contract for the 2004 Policy. Even if he does not recall the 2004 application, he is bound by the terms of the Policy issued in reliance on the application.

It is well-settled that failure to disclose such conditions which affect the risk makes an insurance contract voidable at the insurer's option. *Stipcich v. Metropolitan Life Ins. Co.,* 277

14

U.S. 311, 314 (1928). The Ohio Supreme Court has held that nothing more completely vitiates a contract of insurance than false answers to material questions in an insurance application. *Redden*, 172 Ohio St. 20. The Ohio Department of Insurance, charged with "ensuring that the insurance company abide by . . . Ohio insurance statutes" reviewed Plaintiff's consumer complaint and investigated Time's basis for rescission, and concluded that "Time Insurance Company is within their legal rights to rescind Mr. Long's contract." (Doc. 65, Ex. 37 at p. 2).

This Court finds, based upon all of the facts in evidence, that a reasonable trier of fact could only conclude that Defendant Time has clearly and convincingly proved Plaintiff's answer to Question 3 to be "knowingly false." *Heekin v. Mutual of Omaha Ins. Co.*, Cuyahoga App. No. No. 54954, 1989 Ohio App. LEXIS 150 (Ohio Ct. App., Jan. 19, 1989) (Discussing the insurer's "clear and convincing" burden of proof, and affirming summary judgment in favor of insurer who satisfied the elements of O.R.C. § 3923.14 in rescinding a healthcare policy of insurance.). Accordingly, Plaintiff's claim for violation of Ohio Rev. Code § 3923.14 fails.

For the reasons set out above, Plaintiff has not raised a genuine issue of material fact preventing summary judgment on his breach of contract and bad faith claims. Because the Policy was properly rescinded under Ohio Rev. Code § 3923.14, it did not constitute a breach of the contract to deny coverage for Plaintiff's surgery. Time has also established that it had a "reasonable justification in denying the claim" such that Plaintiff cannot maintain a claim for bad faith. *Ho v. State Farm Fire & Cas. Co.*, Cuyahoga App. No. No. 86217, 2005 Ohio 5452; 2005 Ohio App. LEXIS 4927 (Ohio Ct. App., Oct. 13, 2005); *Lococo v. Med. Sav. Ins. Co.*, 530 F.3d 442 (6th Cir., 2008) ("In determining whether an insurer acted with the requisite good faith, a reviewing court must examine whether the insurer had 'reasonable justification' for taking the

15

challenged action. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 1994 Ohio 461, 644 N.E.2d 397, 399-400 (Ohio 1994).")

### III.

For the foregoing reasons, Defendants Time Insurance Company and State Farm's Motions for Summary Judgment (Docs. 65 and 78) are hereby **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants.

**IT IS SO ORDERED.**

 8 - 7 - 2008
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

16